## Davis v. Davis, et al.

(Decided December 1, 1925.)

### Appeal from Rockcastle Circuit Court.

1. Executors and Administrators—Claims Not Allowable Against Decedent's Estate, where Not Verified by Original Claimants and Supported Only by Defendant's Affidavit.—Claims were not allowable against decedent's estate, where they were not verified by original claimants, and could not have been allowed in a suit for settlement, and defendant did not purchase and take an assignment of them, but claimed to have paid and settled them, and

each formed an item in claim which he presented, and to which in its entirety he filed his own and supporting affidavit.

2.    Contracts—Evidence Held Not to Show an Agreement Between Decedent's Son and His Stepmother on Her Part to Pay Him for Expenditures for Family's Support.—Evidence held not to show an agreement between son of deceased and his stepmother on her part to pay him for expenditures for family's support; and to show correctness of items charged therefor.

B. J. BETHURUM and BETHURUM & DUNCAN for appellant.

C. C. WILLIAMS for appellees.

Opinion of the Court by Judge McCandless— Affirming.

W. A. B. Davis died in April, 1915. At the time of his death, aside from his household and kitchen furniture which were set aside to his widow, his property consisted of a residence of the value of $1,000.00, which was encumbered by mortgage to secure a debt of $350.00; he also owed other small debts. He had been married twice and was survived by three children of his first marriage and by his second wife and four children of the second marriage. His immediate family consisted of his wife and their four sons, aged from 15 down; an invalid daughter by his first marriage aged 19, and a son, C. A.. aged about 30.

His death occurred while he was county school superintendent of Rockcastle county, and thereafter an arrangement was made by which a friend of the family was temporarily appointed to that office and by which the office was conducted by Mrs. Davis and the salary paid to her. Later she was elected to fill the unexpired term and still later was elected for a full term

C. A. Davis was a young man of some business ability and after his father's death it appears that he paid the small indebtedness of the estate and arranged with a local bank for the latter to take up the lien debt due on the residence and for a payment of that debt in monthly installments. He and his sister continued to live with their stepmother, who did the cooking, and together with the children did the housework; and who also attended to the duties of the superintendent's office. During the summer months she received some small sums from her father, as much as $50.00 at one time and other similar amounts, and on the first of September was paid $265.00 salary for the office. All of this was turned over

to C. A. Davis, who deposited it to his own credit as the nominal head of the family and used it in the payment of family expenses and the liquidation of accounts.

After being appointed to the office Mrs. Davis received her salary monthly, and during the remainder of the year 1915 and all of 1916 continued to deliver the vouchers for her salary to C. A. Davis, who deposited them to his own credit, and used the proceeds as above indicated.

Beginning on January 1, 1916, he paid $30.00 about the first of each month to the bank on the lien debt, the final payment being in January, 1917, at which time he took an assignment of it from the bank to himself. Upon ascertaining that fact Mrs. Davis brought this suit to cancel the assignment and to require the bank to assign the note to her, asserting that she had furnished the money to C. A. Davis for that purpose and in making the payments mentioned he had acted as her agent.

The defendant answered, traversing the allegations of the petition, and by way of answer, counterclaim and cross-petition pleaded (1) by way of counterclaim, that he had furnished to Mrs. Davis, at her instance and request, clothing, foodstuff and other necessaries during the time from June, 1915, to January, 1919, to the amount of $3,077.06, upon which she had paid only the sum of $1,333.28, and that she was indebted to him in the sum of $1,673.78, for which sum he sought judgment against her. In another paragraph he made the heirs at law of W. A. B. Davis, deceased, parties defendant on cross-petition, set up the lien note above mentioned, asked judgment for the amount of it, that the lien be enforced and satisfied by a sale of the property. In another paragraph, which was also made a cross-petition against the same parties, he set out various items of indebtedness owing by W. A. B. Davis at the time of his death and which he alleged that he had paid and settled and which he sought to recover, asking a settlement of the estate.

Proof was taken on all the issues, and upon final hearing the circuit judge sustained a motion to strike the affirmative pleas in the answer from the record; and on the proof sustained plaintiff's contention and ordered a cancellation of the instrument in question and an assignment thereof to plaintiff. Defendant appeals.

Without discussing the technical questions as to whether the counterclaim and cross-petition were proper pleas, or the propriety of the order striking same from the record, it may be said that this order was not made until after proof was taken upon all the issues and the case submitted, and we have reached the conclusion that the same result would have been reached upon a trial of the case on its merits.

(1) With the exception of small sums paid for funeral expenses and monument, the various claims alleged to have been due and owing by the estate were not verified by the original claimants and could not have been allowed in a suit for settlement. Defendant did not purchase and take an assignment of them. He claims to have paid and settled them, and each forms an item in the claim which he presents, and as to which in its entirety he files his own and a supporting affidavit. We do not think this sufficient under the statute.

(2) The paragraph which seeks a recovery upon the assigned note and a settlement of the estate depends upon his title to the note. As we have elsewhere decided this question adversely to him it follows that he could not maintain an action thereon.

(3) Plaintiff testifies positively that she and defendant agreed for her to deliver to him the vouchers received by her in payment of her monthly salary and that he would pay $30.00 of this amount each month as an installment upon the note and use the balance for her in payment of household expenses; that she did this and continued to do so until the note was fully paid. The bank records show that about the first of each month the defendant deposited such vouchers to his own credit and simultaneously therewith gave his own checks to the bank in payment of the installment except in two instances in which the payment was delayed for one or two days after the deposit was made. It is shown that plaintiff's boys did some labor around the house and in the garden; that the daughter by the first marriage lived with plaintiff, was an invalid and that she and defendant lived as members of the family.

Defendant testifies that the family expenses ran from $40.00 to $100.00 per month, and that he paid the deficit out of his own funds and denies any agreement between himself and plaintiff except that she gave him her

monthly voucher to pay on the family expenses as far as it would go and that he paid the balance. He has also presented an itemized account of articles purchased by him for the family's use, some of these appearing quite unreasonable; for instance, the item of meat alone during the years mentioned amounted to the sum of $1,487.00; and while there is some corroborating proof along this line, it is entirely lacking in detail. Even on his theory of the case it is evident that he and his sister were living with their stepmother and her children as a matter of mutual convenience. Yet he ignores every obligation resting upon him either financially or morally for the support of his infant half-brothers; makes no allowance for board for himself or his sister as members of his stepmother's family or offers any compensation therefor, apparently adopting the view that they were guests and enjoying the widow's hospitality without compensation and as such he was entitled to recover from her everything that he contributed to the family's support. Under all the circumstances such an unnatural attitude raises a doubt as to the sincerity of his claim and calls for a careful scrutiny of it and for clear proof of an agreement upon her part to pay him for such expenditures. Thus construed the evidence fails to show such agreement and also fails to show the correctness of the items charged in the counterclaim, and the court should have no hesitancy in dismissing that pleading on the merits.

(4) At best the evidence on the issue as to the agreement for the payment of the bank note and as to the funds out of which it was paid are conflicting. In this the chancellor found for the plaintiff and we are not inclined to disturb the ruling.

On the whole case, perceiving no error, the judgment is affirmed.